ALLISON LAPLANTE, OSB # 023614
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel:  (503) 768-6894
Fax:  (503) 768-6642
laplante@lclark.edu

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL ADVOCATES**, an Oregon nonprofit corporation, | Case No. 3:15-cv-0663 |
| Plaintiff, | |
| v. | COMPLAINT<br>Clean Water Act Citizen Suit<br>(33 U.S.C. § 1365(a)(2)) |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY** and **GINA McCARTHY**, in her official capacity as Administrator of the United States Environmental Protection Agency, | |
| Defendants. | |

## INTRODUCTION

1.      This is a complaint for declaratory and injunctive relief under the Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*  Plaintiff Northwest Environmental Advocates ("NWEA") brings this action under the "citizen suit" provision of the CWA, 33 U.S.C. § 1365(a)(2), against the United States Environmental Protection Agency ("EPA") and Gina McCarthy, in her official capacity as the Administrator of the EPA, for their failure to perform mandatory duties under the Act.

2.      As required by the CWA, in July of 2004 the State of Oregon submitted revised water quality standards for numerous toxic pollutants to the EPA for review and approval.  *See* 33 U.S.C. § 1313(c)(2)(A). After considerable delay and only after being prompted by a prior NWEA lawsuit, EPA finally took action on Oregon's revised standards over eight years later, on January 31, 2013.  EPA approved most of the standards submitted by Oregon but expressly disapproved seven standards (specifically, numeric criteria for the toxic pollutants aluminum, ammonia, and copper intended to protect aquatic life from acute and chronic toxicity and the acute aquatic life criterion for cadmium), and in so doing notified the State of the changes needed to meet the requirements of the Act.  *See id.* § 1313(3).

3.      Oregon did not adopt EPA's recommended changes within 90 days of EPA's notification, however, thereby triggering a mandatory duty for the EPA Administrator to "promptly prepare and publish proposed regulations setting forth" revised water quality standards for Oregon. *Id.* § 1313(c)(3), (4)(A).

4.      EPA's mandatory duty to "promptly prepare and publish" replacement aluminum, ammonia, cadmium, and copper water quality standards for Oregon arose on May 1, 2013, 90 days after EPA disapproved those standards; yet to date, EPA has not fulfilled this duty. And with the exception of ammonia, the State of Oregon has no public proposal for revising the toxics criteria in the wake of EPA's January 31, 2013 disapproval. As EPA is well aware, Oregon's current water quality standards for aluminum, ammonia, cadmium, and copper are over 20 years old, and provide nowhere near the degree of protection needed for aquatic life, including endangered salmonids, to survive and thrive in Oregon's rivers and streams.

5.      In this action NWEA seeks declaratory and injunctive relief, most importantly an order requiring the EPA Administrator to fulfill her duty under 33 U.S.C. § 1313(c)(4) to promptly prepare and publish proposed water quality standards for aluminum, ammonia, cadmium, and copper applicable to the State of Oregon, as well as an award of litigation costs (including reasonable attorneys' fees) as authorized by 33 U.S.C. § 1365(d).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The requested relief is proper under 28 U.S.C. § 2201(a), 28 U.S.C. § 2202, and 33 U.S.C. § 1365(a), (d).

7.      As required by section 505(b)(2) of the CWA, 33 U.S.C. § 1365(b)(2), on February 11, 2015 NWEA furnished EPA and Administrator McCarthy with notice of its

intent to sue for the CWA violations alleged in this complaint. *See* Exhibit 1. More than

60 days have passed since NWEA sent the notice of intent to sue.

8.    Venue is properly vested in this Court pursuant to 28 U.S.C. §

1391(e)(1)(b) because a substantial part of the events or omissions giving rise to the

claims in this case occurred in Oregon. This action is appropriately filed in the Portland

Division because a substantial part of the events or omissions giving rise to the claims in

this case occurred in Multnomah County. *See* LR 3-2(a)(1).

<u>PARTIES</u>

9.    Plaintiff NORTHWEST ENVIRONMENTAL ADVOCATES is a regional non-

profit environmental organization incorporated under the laws of Oregon, with its

principal place of business in Portland, Oregon, located within Multnomah County.

NWEA's mission is to work through advocacy and education to protect and restore water

and air quality, wetlands, and wildlife habitat in the Pacific Northwest.

10.    Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is

an agency of the United States Government charged with oversight responsibility under

the CWA. EPA's oversight role entails the performance of mandatory duties in

conjunction with a State's efforts to establish and implement water quality standards.

11.    Defendant GINA MCCARTHY is the Administrator of the EPA, and in that

official capacity is required to take certain actions to oversee and implement the Clean

Water Act, including the review and approval or disapproval of state-submitted water

quality standards as well as the promulgation of replacement standards where necessary.

33 U.S.C. § 1313(c).

## LEGAL BACKGROUND

12.      Section 303(c)(1) of the CWA requires a State to review its "applicable water quality standards" every three years and, where necessary, adopt new or revised standards to ensure full compliance with the Act.  33 U.S.C. § 1313(c)(1).

13.      Each new or revised water quality standard must delineate: (1) the "designated uses of the navigable waters involved," (2) the "water quality criteria" necessary to protect those uses, and (3) an "antidegradation policy."  33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. § 131.6.  The CWA further requires that any new or revised water quality standard must be adequate to "protect the public health or welfare, enhance the quality of water and serve the purposes of [the CWA]." 33 U.S.C. § 1313(c)(2)(A).

14.      Whenever a State "revises or adopts" new water quality standards, CWA section 303(c)(2)(B) requires the State to "adopt criteria for all toxic pollutants" whose "discharge or presence . . . in the affected waters could reasonably be expected to interfere with" the designated uses of those waters.  33 U.S.C. § 1313(c)(2)(B).

15.      Section 303(c)(2)(A) of the CWA requires a State to submit any "revised or new" water quality standards—including adopted criteria for toxic pollutants—to EPA for review and approval.  33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. § 131.20(c).

16.      If EPA determines that any revised or new water quality standards are inconsistent with the requirements of the CWA, it must disapprove the standards and, within 90 days of the State's submission, notify the State of the changes necessary to meet the requirements of the Act. 33 U.S.C. § 1313(c)(3); 40 C.F.R. § 131.21(a)(2).

17.    Once EPA notifies a State that its water quality standards have been disapproved and that changes are necessary to secure EPA approval, that State has 90 days to adopt EPA's specified changes. 33 U.S.C. § 1313(c)(3).

18.    The CWA provides that if a State fails to adopt EPA's specified changes to a State water quality standard "within ninety days after the date of notification," the EPA Administrator "shall promulgate such standard" itself. 33 U.S.C. § 1313(c)(3). The Act provides a two-step process: First, the Administrator "shall promptly prepare and publish proposed regulations setting forth revised or new water quality standards for the navigable waters involved" for the State-submitted standards that it has disapproved, and also for any standards the Administrator independently determines are necessary. *Id.* § 1313(c)(4).  Second, the Administrator "shall promulgate any revised or new standard . . . not later than ninety days" after the proposed standards have been published, unless the State adopts, and EPA approves, a revised water quality standard.  *Id.*

## GENERAL FACTUAL ALLEGATIONS

19.    Oregon first established numeric water quality criteria for toxic pollutants in 1988, primarily based on EPA's national recommended criteria, most of which originated in 1980.  In 1991, Oregon revised its ammonia criteria.  Oregon did not revise any toxic criteria when it submitted new and revised water quality standards to EPA for approval in January 1996 and 2003.

20.    In 1999, the Oregon Department of Environmental Quality ("DEQ") initiated a review of certain of Oregon's water quality standards pursuant to 33 U.S.C. § 1313(c). During the process of this review, DEQ made significant revisions to Oregon's

aquatic life toxics criteria, including numeric criteria for aluminum, ammonia, cadmium, and copper.

21.    Upon completing its review in 2003, DEQ submitted its water quality criteria recommendations to the Oregon Environmental Quality Commission ("EQC") for official adoption. On May 20, 2004, EQC officially adopted DEQ's proposed revisions to Oregon's water quality standards.

22.    On July 8, 2004, DEQ submitted Oregon's new and revised water quality standards, including the revised aquatic life toxics criteria for aluminum, ammonia, cadmium, and copper, to EPA for review, as required by 33 U.S.C. § 1313(c)(2)(A).

23.    With the exception of ammonia, Oregon's July 8, 2004 submission to EPA represented its first attempt to update its aquatic life water quality criteria for toxic pollutants since those criteria were first established in 1988.

24.    EPA did not timely act on Oregon's July 8, 2004 submission as required by 33 U.S.C. § 1313(c)(3), and so in 2006 NWEA filed a lawsuit against EPA, seeking immediate injunctive relief to compel EPA action to approve or disapprove Oregon's July 8, 2004 submission of new and revised water quality standards. *Nw. Envtl. Advocates v. U.S. EPA*, No. 06-cv-479-HA (D. Or. filed Apr. 7, 2006).

25.    On May 29, 2008, the court entered a consent decree in Case No. 06-479-HA; that consent decree required EPA to take action on Oregon's July 8, 2004 aquatic life toxics criteria upon completion of biological opinions ("BiOps") by the National Marine Fisheries Service ("NMFS") and United States Fish & Wildlife Service ("FWS") (collectively "the Services") pursuant to section 7 of the Endangered Species Act ("ESA").

26.    NWEA was forced to file suit once again in order to obtain timely completion of the BiOps by the Services. *Nw. Envtl. Advocates v. NMFS*, No. 10-cv-907-BR (D. Or. filed Aug. 2, 2010). On August 18, 2010, pursuant to a stipulated dismissal in that case, NMFS and FWS agreed to complete the required BiOps for Oregon's July 8, 2004 new and revised aquatic life toxics criteria.

27.    Throughout the process of litigation, from April 7, 2006 through October 2012, NWEA granted numerous deadline extensions to EPA, NMFS, and FWS to facilitate compliance with their mandatory duties under the CWA and ESA.

28.    By letter dated January 31, 2013, EPA finally took action on Oregon's July 8, 2004 revised water quality aquatic life criteria for toxics, as amended by submissions on April 23, 2007 and July 21, 2011, approving 38 criteria values associated with 14 toxic pollutants while simultaneously disapproving 45 criteria values associated with 16 toxic pollutants.

29.    Among those water quality criteria expressly disapproved by EPA on January 31, 2013, are the following seven criteria at issue in this case: the freshwater acute and freshwater chronic criteria for aluminum; the freshwater acute and freshwater chronic criteria for ammonia; the freshwater acute and freshwater chronic criteria for copper; and the freshwater acute criterion for cadmium.

30.    EPA's January 31, 2013 disapprovals of aquatic life criteria for aluminum, ammonia, cadmium, and copper were based on findings by NMFS that these criteria "would cause significant adverse toxicological and biological effects" on certain ESA-listed species in Oregon, thus jeopardizing the continued existence of those species or

resulting in the adverse modification of designated critical habitat. *See* 16 U.S.C. § 1536(a)(2).

31.    On December 12, 2014, in response to EPA's January 31, 2013 formal disapproval action, DEQ adopted revisions addressing 38 criteria values associated with 12 toxic pollutants. However, DEQ did not at that time take any action to revise the disapproved criteria for aluminum, ammonia, cadmium, or copper.

32.    On January 7, 2015, Oregon adopted new water quality criteria for ammonia. EPA has taken no official action approving or disapproving Oregon's latest ammonia criteria pursuant to 33 U.S.C. § 1313(c)(4).

33.    Since EPA's January 31, 2013 partial disapproval of Oregon's July 8, 2004 water quality criteria, Oregon has neither promulgated nor proposed revised water quality criteria for aluminum, cadmium, or copper.

34.    Since EPA's January 31, 2013 partial disapproval of Oregon's July 8, 2004 water quality criteria, the EPA Administrator has not prepared or published proposed regulations setting forth revised or new water quality criteria for aluminum, ammonia, copper, or cadmium for the protection of aquatic life in Oregon.

35.    EPA's January 31, 2013 disapproval of Oregon's July 8, 2004 revisions to the State's acute and/or toxic water quality criteria for aluminum, ammonia, copper, or cadmium results in their reversion to criteria in effect for those four toxic pollutants prior to their most recent adoption, namely 1988 for aluminum, copper, and cadmium and 1991 for ammonia. These criteria are outdated and are not protective of aquatic life, and they have specifically been found to pose jeopardy to ESA-listed species and to result in

adverse modification to critical habitat designated for those species, and their continued use poses significant concerns for Oregon's waters and the species that depend on them.

## TOXIC POLLUTANTS, THEIR EFFECTS ON OREGON WATERS, AND INJURIES TO NWEA'S MEMBERS

36.    NWEA and its members use and enjoy the waters of Oregon for recreational, scientific, aesthetic, and other purposes. NWEA's members derive recreational, scientific, and aesthetic benefits from observing, studying, and photographing aquatic species and their habitat in Oregon waters. They also enjoy recreational fishing for salmon and trout species in those waters.

37.    Aluminum ions act as surface active toxicants, binding to or coating the respiratory structures (such as fish gills) of aquatic organisms and impairing their respiratory function. The toxicity of aluminum increases as water becomes more acidic, especially for salmonids.  Anthropogenic sources of aluminum to Oregon surface waters include industrial waste discharges and wastewater treatment plants.

38.    Ammonia occurs naturally and can be an important source of nitrogen for plants, but at elevated concentrations can cause a range of neurological effects to aquatic species, including hyper-excitability, coma, convulsions, and hyperventilation. Salmonids are among the most sensitive aquatic organisms to ammonia toxicity. Sources of ammonia to Oregon's surface waters include agricultural and municipal runoff and wastewater treatment facilities.

39.    Cadmium is considered one of the most toxic metals to fish; it is a known carcinogen and can affect respiration, immune response, growth, and reproduction in freshwater organisms. Background concentrations of cadmium in Oregon's rivers and

COMPLAINT                                                    Page 10 of 19

streams are typically low, but anthropogenic sources of cadmium have increased its presence in the environment considerably. Sources of cadmium in Oregon's surface waters include mining and ore smelting, discharges from industrial processes including electroplating and the manufacture of batteries and electronic components, and stormwater runoff.

40.     Copper is among the most toxic metals to aquatic biota, and the toxicity of copper increases in waters with lower pH and water hardness and higher temperatures. The effects of copper toxicity to freshwater organisms include impaired respiration, osmoregulation, brain function, and disease resistance; reduced resistance to disease; and altered blood chemistry, among other effects. Copper is known for causing losses in olfactory sensory function and alarm response behavior in salmonids.  Anthropogenic sources of copper to Oregon's surface waters include discharges of wastewater and stormwater from mining, smelting, plating, textile, and other similar industrial facilities; municipal wastewater treatment plants; and stormwater runoff from urban areas.

41.     Numerous surface waters in Oregon are listed as "impaired" for aluminum, ammonia, cadmium, and/or copper pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d), meaning they currently fail to attain the (presently lax) water quality standards for one or more of those pollutants. Among these are the Klamath, South Umpqua, Lower Owyhee, Lower Columbia, Middle Willamette, and Tualatin Rivers. Even more waters have been identified by the State or Oregon as of "potential concern" for one or more of these four toxic pollutants. If EPA were required to promulgate more up-to-date, protective standards, it is likely that additional Oregon

waters would be determined to be impaired or of "potential concern" for aluminum, ammonia, cadmium, and/or copper.  A result of identifying these waters as violating water quality standards would be the development of increased pollution controls.

42.     According to NMFS, continued use of Oregon's outdated aquatic life toxicity criteria for aluminum, ammonia, cadmium, and copper will jeopardize the continued existence of 18 ESA -listed species located within the waters of Oregon. Among this group of 18 ESA-listed species, 15 are classified as "threatened" and three are designated as "endangered." Moreover, NMFS has found that continued use of those criteria is likely to destroy or adversely modify 17 critical habitats in relation to that same group of 18 species.

43.     Based on NMFS's evaluation, Oregon's deficient aquatic life toxics criteria for aluminum, ammonia, cadmium, and copper are inadequate to support the CWA's policy of furthering the "protection and propagation of fish" in the nation's waters located within the state of Oregon.  33 U.S.C. § 1251(a)(2); *see also* 33 U.S.C. § 1313(c)(2)(A).

44.     The aesthetic and recreational enjoyment, scientific value, and other benefits obtained by NWEA's members from their use of Oregon's surface waters that are or are reasonably likely to be impacted by aluminum, ammonia, cadmium, and/or copper pollution has been and will continue to be diminished because of those impacts. These NWEA members spend less time on, in, or near those waters, and derive less enjoyment from their aesthetic, recreational, and scientific activities, because they are concerned about the impacts that those four toxic pollutants have on aquatic life in those

waters.

45.     The injuries sustained by NWEA and its members are traceable to EPA and the EPA Administrator's failure to promptly promulgate replacement water quality standards for aluminum, ammonia, cadmium, and/or copper to protect aquatic life in the State of Oregon.  If EPA had acted in a timely fashion as required by the Act, it would have promulgated acute and chronic water quality criteria for those four pollutants that are considerably more protective of aquatic life, including endangered salmonids and other species that contribute to the benefits and values enjoyed by NWEA's members.

46.     The recreational, scientific, and aesthetic interests of NWEA and its members in Oregon waters will continue to be harmed by EPA's failure to comply with the CWA unless the relief requested in this complaint is granted.  An order from this Court requiring EPA to promulgate revised water quality criteria to replace those toxics criteria it has disapproved for aluminum, ammonia, cadmium, and copper, would lead to stronger protections for aquatic life in Oregon's rivers and streams and would ensure that the continued existence of ESA-listed species that live in and use those waters, including salmonids, would not be in jeopardy.

**FIRST CLAIM FOR RELIEF:**
**Failure to Perform a Nondiscretionary Duty to Promulgate New or Revised Water Quality Standards for Aluminum for the Protection of Aquatic Life in Oregon**

47.     NWEA realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 46 as if fully set forth below.

48.     On July 8, 2004, Oregon submitted revised acute and chronic water quality criteria for aluminum to the EPA for review and approval.

COMPLAINT                                                                    Page 13 of 19

49.     On January 31, 2013, EPA formally disapproved Oregon's July 8, 2004 revised acute and chronic water quality criteria for aluminum, notified the State of its decision, and specified the changes needed to those criteria to meet the requirements of the CWA.

50.     Oregon did not adopt EPA's specified changes to Oregon's acute and chronic water quality criteria for aluminum or otherwise revise those criteria within 90 days of January 31, 2013 (i.e., before May 2, 2013), thereby triggering a nondiscretionary duty on the part of the EPA Administrator to promulgate such criteria herself.  33 U.S.C. § 1313(c)(3).

51.     The EPA Administrator has not promulgated new or revised acute or chronic water quality criteria for aluminum for the State of Oregon.

52.     On each day since May 2, 2013, the EPA Administrator has failed to perform her nondiscretionary duty to "promptly prepare and publish proposed regulations setting forth" new or revised acute and chronic water quality criteria for aluminum for the State of Oregon.  33 U.S.C. § 1313(c)(4).

53.     As of the date of this complaint, more than 23 months have passed since EPA's duty to act "promptly" in promulgating replacement aluminum criteria was triggered.

54.     The EPA Administrator's failure to fulfill her mandatory duty to promulgate new or revised acute and chronic water quality criteria for aluminum for the State of Oregon is ongoing, and will continue unless abated by an order of this Court.

SECOND CLAIM FOR RELIEF:
**Failure to Perform a Nondiscretionary Duty to Promulgate New or Revised Water Quality Standards for Ammonia for the Protection of Aquatic Life in Oregon**

55.     NWEA realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 46 as if fully set forth below.

56.     On July 8, 2004, Oregon submitted revised acute and chronic water quality criteria for ammonia to the EPA for review and approval.

57.     On January 31, 2013, EPA formally disapproved Oregon's July 8, 2004 revised acute and chronic water quality criteria for ammonia, notified the State of its decision, and specified the changes needed to those criteria to meet the requirements of the CWA.

58.     Oregon did not adopt EPA's specified changes to Oregon's acute and chronic water quality criteria for ammonia or otherwise revise those criteria within 90 days of January 31, 2013 (i.e., before May 2, 2013), thereby triggering a nondiscretionary duty on the part of the EPA Administrator to promulgate such criteria herself.  33 U.S.C. § 1313(c)(3).

59.     The EPA Administrator has not promulgated new or revised acute or chronic water quality criteria for ammonia for the State of Oregon.

60.     On each day since May 2, 2013, the EPA Administrator has failed to perform her nondiscretionary duty to "promptly prepare and publish proposed regulations setting forth" new or revised acute and chronic water quality criteria for ammonia for the State of Oregon.  33 U.S.C. § 1313(c)(4).

61.     As of the date of this complaint, more than 23 months have passed since

COMPLAINT                                                          Page 15 of 19

EPA's duty to act "promptly" in promulgating replacement ammonia criteria was triggered.

62.    The EPA Administrator's failure to fulfill her mandatory duty to promulgate new or revised acute and chronic water quality criteria for ammonia for the State of Oregon is ongoing, and will continue unless abated by an order of this Court.

<u>THIRD CLAIM FOR RELIEF:</u>
**Failure to Perform a Nondiscretionary Duty to Promulgate New or Revised Water Quality Standards for Cadmium for the Protection of Aquatic Life in Oregon**

63.    NWEA realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 46 as if fully set forth below.

64.    On July 8, 2004, Oregon submitted revised acute and chronic water quality criteria for cadmium to the EPA for review and approval.

65.    On January 31, 2013, EPA formally disapproved Oregon's July 8, 2004 revised acute water quality criterion for cadmium, notified the State of its decision, and specified the changes needed to that criterion to meet the requirements of the CWA.

66.    Oregon did not adopt EPA's specified changes to Oregon's acute water quality criteria for ammonia or otherwise revise that criterion within 90 days of January 31, 2013 (i.e., before May 2, 2013), thereby triggering a nondiscretionary duty on the part of the EPA Administrator to promulgate the criterion herself.  33 U.S.C. § 1313(c)(3).

67.    The EPA Administrator has not promulgated a new or revised acute water quality criterion for cadmium for the State of Oregon.

68.    On each day since May 2, 2013, the EPA Administrator has failed to

perform her nondiscretionary duty to "promptly prepare and publish proposed regulations setting forth" a new or revised acute water quality criterion for cadmium for the State of Oregon.  33 U.S.C. § 1313(c)(4).

69.     As of the date of this complaint, more than 23 months have passed since EPA's duty to act "promptly" in promulgating a replacement cadmium criterion was triggered.

70.     The EPA Administrator's failure to fulfill her mandatory duty to promulgate a new or revised acute water quality criterion for cadmium for the State of Oregon is ongoing, and will continue unless abated by an order of this Court.

<u>FOURTH CLAIM FOR RELIEF:</u>
**Failure to Perform a Nondiscretionary Duty to Promulgate New or Revised Water Quality Standards for Copper for the Protection of Aquatic Life in Oregon**

71.     NWEA realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 46 as if fully set forth below.

72.     On July 8, 2004, Oregon submitted revised acute and chronic water quality criteria for copper to the EPA for review and approval.

73.     On January 31, 2013, EPA formally disapproved Oregon's July 8, 2004 revised acute and chronic water quality criteria for copper, notified the State of its decision, and specified the changes needed to those criteria to meet the requirements of the CWA.

74.     Oregon did not adopt EPA's specified changes to Oregon's acute and chronic water quality criteria for copper or otherwise revise those criteria within 90 days of January 31, 2013 (i.e., before May 2, 2013), thereby triggering a nondiscretionary

COMPLAINT                                                    Page 17 of 19

duty on the part of the EPA Administrator to promulgate such criteria herself.  33 U.S.C. § 1313(c)(3).

75.    The EPA Administrator has not promulgated new or revised acute or chronic water quality criteria for copper for the State of Oregon.

76.    On each day since May 2, 2013, the EPA Administrator has failed to perform her nondiscretionary duty to "promptly prepare and publish proposed regulations setting forth" new or revised acute and chronic water quality criteria for copper for the State of Oregon.  33 U.S.C. § 1313(c)(4).

77.    As of the date of this complaint, more than 23 months have passed since EPA's duty to act "promptly" in promulgating replacement copper criteria was triggered.

78.    The EPA Administrator's failure to fulfill her mandatory duty to promulgate new or revised acute and chronic water quality criteria for copper for the State of Oregon is ongoing, and will continue unless abated by an order of this Court.


## REQUEST FOR RELIEF

WHEREFORE, NWEA respectfully requests this Court grant the following relief:

1. Declare that EPA and the EPA Administrator have violated and continue to violate section 303(c)(3)-(4) of the CWA, 33 U.S.C. § 1313(c)(3)-(4), by failing to promulgate replacement water quality criteria for the seven disapproved toxic criteria values at issue in this litigation;

2. Issue an injunction pursuant to section 505(a) of the CWA, 33 U.S.C. § 1365(a), ordering the EPA Administrator to "promptly" prepare and publish

replacement criteria for Oregon's delinquent toxic criteria values, and to promulgate such criteria within 90 days after their publication, 33 U.S.C. § 1313(c)(4);

3.  Award NWEA its litigation costs and reasonable attorneys' fees pursuant to section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

4.  Grant such other relief as the Court deems just and proper.

Dated this 20th day of April, 2015.

s/ Allison LaPlante

Allison LaPlante (OSB # 023614)
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel:  (503) 768-6894
Fax:  (503) 768-6642
laplante@lclark.edu

*Attorney for Plaintiff*