UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

NORTHWEST ENVIRONMENTAL
ADVOCATES, an Oregon nonprofit
corporation,

               Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and GINA
McCARTHY, in her official capacity as
Administrator of the United States
Environmental Protection Agency,

               Defendants.

Civil No. 3:15-cv-00663-BR

**THIRD AMENDED
CONSENT DECREE**

WHEREAS, Plaintiff Northwest Environmental Advocates ("NWEA") filed this action on April 20, 2015, against Federal Defendants United States Environmental Protection Agency ("EPA") and Gina McCarthy, in her official capacity as Administrator of the EPA, alleging violations of the Clean Water Act ("CWA"), 33 U.S.C. §§1251 *et seq.*, and seeking declaratory and injunctive relief, and attorneys' fees and costs;

WHEREAS, pursuant to 33 U.S.C. § 1313(c)(3) and 40 C.F.R. §§ 131.5, 131.13, and 131.21(b), EPA is directed to review state-submitted water quality standards to determine whether the standards meet the requirements of the CWA;

WHEREAS, pursuant to 33 U.S.C. § 1313(c)(3), if EPA determines that such standard is not consistent with the requirements of the CWA, within 90 days of the state's submission, EPA must notify the state and specify the changes to meet such requirements;

Third Amended Consent Decree – page 1

WHEREAS, pursuant to 33 U.S.C. § 1313(c)(3), if such changes are not adopted by the state within 90 days after the date of notification, the Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved;

WHEREAS, on July 8, 2004, Oregon submitted new and revised water quality criteria for aquatic life to EPA for review and approval. Among these were revised acute and chronic freshwater aquatic life criteria for ammonia ("ammonia criteria"), cadmium ("cadmium criteria"), and copper ("copper criteria"), and new acute and chronic freshwater aquatic life criteria for aluminum ("aluminum criteria");

WHEREAS, by letter dated January 31, 2013, EPA disapproved Oregon's 2004 submission of its aluminum criteria, its ammonia criteria, its acute cadmium criterion, and its copper criteria;

WHEREAS, on January 7, 2015, Oregon adopted revisions to its ammonia criteria and EPA approved these criteria on August 4, 2015;

WHEREAS, Oregon has not adopted revisions to its aluminum criteria, its acute cadmium criterion, or its copper criteria to address EPA's January 31, 2013 disapproval of these criteria;

WHEREAS, EPA has not proposed aluminum criteria since its January 31, 2013 disapprovals but signed a proposal for copper criteria and an acute cadmium criterion on March 31, 2016;

WHEREAS, the Parties agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action;

Third Amended Consent Decree – page 2

NOW, THEREFORE, without the trial of any issue of fact or law, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 33 U.S.C. § 1365(a) (CWA citizen suit provision) and 28 U.S.C § 1331 (federal question).

2. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claims occurred in Oregon.

## II. DEFINITIONS

3. Whenever terms listed below are used in this Consent Decree, the following definitions shall apply:

   a. "NWEA" shall mean the Plaintiff in this action, Northwest Environmental Advocates.

   b. "EPA" shall mean the United States Environmental Protection Agency.

   c. "Party" shall refer to either NWEA or EPA.

   d. "Parties" shall refer collectively to NWEA and EPA.

   e. The term "copper and cadmium criteria" shall refer to acute and chronic copper freshwater criteria for the protection of aquatic life and the acute cadmium freshwater criterion for the protection of aquatic life.

   f. The term "copper criteria" shall refer to acute and chronic copper freshwater criteria for the protection of aquatic life.

   g. The term "aluminum criteria" shall refer to acute and chronic aluminum freshwater criteria for the protection of aquatic life.

    h.    The term "state criteria" shall refer to water quality criteria adopted by the State of Oregon.

## III. SCHEDULE FOR EPA ACTION

    4.    <u>Copper and Cadmium Criteria</u>

    a.    By January 16, 2017, EPA will either:

        (i).    Approve state copper and/or cadmium criteria for Oregon submitted to address EPA's January 31, 2013 disapproval; or

        (ii).    To the extent criteria are not approved under III.4.a.i, sign a notice of final rulemaking.

    5.    <u>Aluminum Criteria</u>

    a.    By March 15, 2019, EPA will either:

        (i).    Approve state aluminum criteria for Oregon submitted to address EPA's January 31, 2013 disapproval; or

        (ii).    To the extent criteria are not approved under III.5.a.i, sign a notice of federal rulemaking proposing such aluminum criteria for Oregon, to address EPA's January 31, 2013 disapproval.

    b.    In the event that EPA signs a notice of federal rulemaking proposing aluminum criteria for Oregon under III.5.a.ii, EPA will, no later than six months after the date on which National Marine Fisheries Service ("NMFS") issues a Biological Opinion regarding the aluminum criteria previously proposed by EPA, either:

        (i).    To the extent not approved under III.5.a.i., approve state aluminum criteria for Oregon submitted to address EPA's January 31, 2013 disapproval; or

(ii). To the extent criteria are not approved under III.5.a.i or III.5.b.i., sign a notice of final rulemaking.

## IV.    FEES AND COSTS

6.    The United States agrees to pay, and NWEA agrees to accept, $40,000.00 in full settlement of all claims by NWEA for its costs of litigation (including reasonable attorneys' fees and expenses) up to and including the date this Consent Decree is executed by the Parties. Said payment shall be made by electronic transfer to NWEA, and sent to Albina Community Bank:

| | |
|---|---|
| Bank name: | Albina Community Bank |
| Bank address: | 430 NW 10th Ave., Portland, OR 97209 |
| ABA Routing#: | 123006651 |
| Account #: | 001454692009 |
| Name of account: | IOLTA Trust Account |
| Federal Tax #: | 93-0386858 |

This electronic transfer shall be made within ninety (90) days after the Court enters the Consent Decree.

7.    NWEA reserves the right to seek an award for reasonable attorneys' fees and costs incurred after entry of this Consent Decree in connection with any disagreement between the Parties concerning the interpretation, proposed modification, or performance of any aspect of this Consent Decree. In the event that NWEA seeks such fees and costs, the Parties shall attempt to reach agreement as to the appropriate amount of recovery. If the Parties are unable to reach agreement, NWEA may file an application with the Court for such recovery.

## V.    CONTINUING JURISDICTION

8.    This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Consent Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve

any dispute regarding the terms or conditions of this Consent Decree, and for granting any further relief as the interests of justice may require.

9. Nothing in this Consent Decree shall be construed to limit the equitable powers of the Court to modify those terms upon a showing of good cause by any party.

10. Nothing in the terms of this Consent Decree shall be construed to confer upon this Court jurisdiction to review any decision, either procedural or substantive, to be made by EPA pursuant to this Decree, except for the purpose of determining EPA's compliance with this Decree, and nothing in this Consent Decree alters or affects the standards for judicial review of final EPA action.

## VI. DISPUTE RESOLUTION

11. In the event of a disagreement between the Parties concerning the interpretation of any provision of this Consent Decree or performance thereof, the dissatisfied Party shall provide the other Party with written notice of the dispute and a request for negotiations. The Parties agree to negotiate in good faith regarding any disagreement. If the Parties cannot resolve such disagreement within thirty (30) days after receipt of the notice by the other Party or within such other period of time to which the Parties mutually agree, then either Party may move the Court to resolve the dispute. Pursuant to the Federal Rules of Civil Procedure and the Local Rules for the District of Oregon, the non-moving Party shall have the opportunity to respond to such motion, and either Party may seek oral argument before the Court.

## VII. MODIFICATIONS AND EXTENSIONS

12. Any term set forth in this Consent Decree (including any deadlines) may be modified by written agreement of the Parties and approval of the Court.

13. In the event EPA seeks to extend any deadline(s) set forth in Paragraphs 4, 5, or 6 above, EPA shall notify NWEA of its intent to seek such extension(s) in writing as expeditiously as practicable after so determining and as far in advance of the applicable deadline as practicable. A request for extension shall show good cause, by written explanation with supporting documentation, justifying EPA's request.

14. If either Party seeks to modify the terms of this Consent Decree pursuant to Paragraph 12, that Party shall provide the other Party with written notice of the proposed modifications and a request for negotiations. The Parties agree to negotiate in good faith regarding any proposed modification of the Consent Decree. If the Parties agree to a proposed modification, the Parties shall jointly notify the Court of the modification and request Court approval. If the Parties cannot reach agreement regarding the proposed modification within thirty (30) days after receipt of the notice of the proposed modification by the other Party or within such other time to which the Parties mutually agree, then either Party may move the Court for such modification. Pursuant to the Federal Rules of Civil Procedure and the Local Rules for the District of Oregon, the non-moving Party shall have the opportunity to respond to such motion, and either Party may seek oral argument before the Court.

## VIII. EFFECTIVE DATE

15. This Consent Decree shall become effective upon the date of its entry by the Court. If for any reason the District Court does not enter this Consent Decree, the obligations set forth in this Decree are null and void.

## IX. TERMINATION OF CONSENT DECREE

16. This Consent Decree shall terminate after fulfillment of EPA's obligations under Parts III and IV, above. Upon completion of EPA's obligations under Parts III and IV, the

Third Amended Consent Decree – page 7

Parties shall file a joint motion seeking termination of this Consent Decree and dismissal of this case with prejudice.

## X.  NOTICE AND CORRESPONDENCE

17.  Any notice, including correspondence, required or made with respect to this Consent Decree, shall be in writing and shall be effective upon receipt. For any matter relating to this Consent Decree, the contact persons are:

For NWEA:

> James N. Saul
> Allison LaPlante
> Earthrise Law Center at Lewis & Clark Law School
> 10015 S.W. Terwilliger Blvd.
> Portland, OR 97219

For EPA:

> Chief, Environmental Defense Section
> United States Department of Justice
> Environment & Natural Resources Division
> P.O. Box 7611
> Washington, D.C. 20044
>
> Associate General Counsel
> Office of General Counsel, 2355A
> U.S. Environmental Protection Agency
> 1200 Pennsylvania Ave. N.W.
> Washington, D.C. 20460
>
> Alexander Fidis
> Office of Regional Counsel
> U.S. Environmental Protection Agency
> 1200 Sixth Ave, Suite 900
> M/S ORC-113
> Seattle, WA 98101

Upon written notice to the other Parties, any Party may designate a successor contact person for any matter relating to this Consent Decree.

## XI.  RELEASE BY PLAINTIFF AND RESERVATION OF RIGHTS

18.  Upon entry, this Consent Decree shall constitute a complete and final settlement of all claims asserted, or that could have been asserted, by NWEA in the Complaint, subject to the express reservations of rights in Paragraphs 7 and 20-23 herein.

19.  NWEA hereby forever releases, discharges, and covenants not to assert against EPA (by way of the commencement of an action, the joinder of EPA in an existing action or in an existing action or in any other fashion) any and all claims, causes of action, suits or demands of any kind whatsoever in law or in equity, that NWEA may have had, or may now or hereafter have, against EPA based upon the same transaction or occurrence as that at issue in the Complaint.

20.  Nothing in this Decree shall limit NWEA's rights to assert the claim pleaded in NWEA's Complaint, and make any legal or factual assertions necessary to support a claim, in the event that the Parties are before the Court pursuant to Paragraph 11 ("Dispute Resolution") or Paragraphs 12-13 ("Modifications and Extensions").

21.  Nothing in this Decree shall otherwise waive or limit NWEA's rights to challenge in a separate lawsuit the merits of any final agency action taken by EPA pursuant to this Consent Decree pertaining to EPA's final action on Oregon's water quality standards pursuant to this Consent Decree.

22.  Nothing in this Decree shall otherwise waive or limit NWEA's rights to bring any actions or claims regarding EPA's obligations in states other than Oregon or to challenge any EPA action related to Oregon's water quality standards except as identified in Paragraph 19.

23.  EPA and the United States reserve all defenses to such actions or claims referenced in Paragraphs 7 and 20-23.

## XII. FORCE MAJEURE

24. The possibility exists that circumstances outside the reasonable control of EPA could delay compliance with the deadlines specified in this Consent Decree. Such circumstances include, but are not limited to, an environmental disaster that would require EPA employees to divert resources away from the project, or a government shutdown. Should a delay occur due to circumstances outside the reasonable control of EPA, any resulting failure to meet the deadlines set forth herein shall not constitute a failure to comply with the terms of the Consent Decree, and any deadlines occurring during or within one hundred twenty (120) days of the termination of the delay shall be extended one day for each day of the delay. EPA will provide NWEA with notice as soon as is reasonably possible in the event that EPA invokes this term of the Consent Decree and will provide NWEA with an explanation of EPA's basis for invoking this paragraph. NWEA may challenge the invocation of this term of the Consent Decree under the dispute resolution terms of Part VI of this Consent Decree, and EPA shall bear the burden of justifying the invocation of this term.

## XIII. MUTUAL DRAFTING AND CONSTRUCTION

25. It is hereby expressly understood and agreed that this Consent Decree was jointly drafted by NWEA and EPA. Accordingly, the parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Decree.

## XIV. EFFECT OF DECREE

26. This Consent Decree shall not constitute an admission or evidence of any issue of fact or law, wrongdoing, misconduct, or liability on the part of any party.

## XV. SCOPE OF DECREE

27. Except as expressly provided in this Consent Decree, none of the parties waives or relinquishes any legal rights, claims, or defenses it may have. Nothing in the terms of this Consent Decree shall be construed to limit or modify the discretion accorded EPA under the Clean Water Act or by general principles of administrative law. Nothing in this Consent Decree shall be construed to make any other person or entity not executing this Consent Decree a third-party beneficiary to this Consent Decree.

## XVI. COUNTERPARTS

28. This Consent Decree may be executed in any number of counterpart originals, each of which shall be deemed to constitute an original agreement, and all of which shall constitute one agreement. The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

## XVII. APPLICABLE LAW

29. This Consent Decree shall be governed by and construed under the laws of the United States.

## XVIII. SEVERABILITY

30. Subsequent to entry of this Consent Decree by the Court, if any term, condition or provision of this Consent Decree, or the application thereof to any person or circumstance, shall to any extent be held by a court of competent jurisdiction or rendered by the adoption of a statute by the United States invalid, void or unenforceable, the remainder of the terms, covenants, conditions or provisions of this Decree, or the application thereof to any person or circumstance, shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby.

XIX. **COMPLIANCE WITH OTHER LAWS**

31.     No provision in this Consent Decree shall be interpreted as or constitute a commitment or requirement that EPA take action in contravention of the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706; the Clean Water Act, 33 U.S.C. §§ 1251-1387, the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other law or regulation, either substantive or procedural.

XX. **REPRESENTATIVE AUTHORITY**

32.     Each person signing this Consent Decree certifies that he or she has been duly authorized to enter into and execute the terms and conditions of this Consent Decree by the party on whose behalf it is indicated that the person is signing, and to legally bind such party to this Consent Decree. By signature below, all of the Parties consent to the entry of this Consent Decree.

IT IS SO ORDERED.

Dated and entered this 16th day of March, 2020.

_____
Anna J. Brown
United States Senior
District Judge